UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MIKE AARLIE and DARLA AARLIE,<br><br>    Plaintiffs,<br><br>  vs.<br><br>MIKE AKINS,<br><br>    Defendant. | NO. CV-06-0234-JLQ<br><br>MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendant's Motion for Summary Judgement (Ct. Rec. 20) and Plaintiffs (sic) Response to Defendants (sic) Motion to Dismiss[;] Plaintiffs (sic) Motion for Summary Judgment (Ct. Rec. 17). Defendant Mike Akins is represented by **G. Scott Beyer**. Plaintiffs Mike and Darla Aarlie are proceeding *pro se.*

**INTRODUCTION**

This action is brought as a result of a search executed on a residence located in Grandview, Washington, suspected of housing a methamphetamine lab, that Plaintiffs, who were arrested and criminally charged as a result of the search, allege was performed without a valid search warrant and that their detentions and subsequent arrests were effectuated through the use of excessive force.

The Plaintiffs' original complaint sought to bring a civil rights action under 42 U.S.C. §§ 1983 and 1985, along with several state tort claims, against many Defendants including police officers, social workers, a deputy sheriff, a guardian ad litem, and an attorney, for participating in the Plaintiffs' eviction, arrest and criminal prosecution, and Department of Social & Health Services child custody dispute. After reviewing the legal sufficiency of Plaintiffs' complaint pursuant to 28 U.S.C. § 1915(e)(2), the court entered

ORDER - 1

an Order on January 5, 2007, dismissing all of the Plaintiffs' § 1983 claims except Mike Aarlie's claim for unreasonable force and Darla Aarlie's claims for unreasonable force, unreasonable search and seizure, wrongful arrest, false imprisonment, and malicious prosecution. Also, Plaintiffs' state law claims for malicious prosecution, false arrest and imprisonment, assault, battery, and intentional infliction of emotional distress remained. Further, as a result of the court's January 5, 2007 Order, Mike Akins is the only remaining defendant in this action.

Defendant Mike Akins ("Akins") is a detective for the Grandview Police Department and serves on the Law Enforcement Against Drugs (L.E.A.D.) Task Force. The L.E.A.D. Task Force is funded by the federal government with participation from the City of Grandview; the Drug Enforcement Agency; the Bureau of Alcohol, Tobacco and Firearms; Immigration and Customs Enforcement; Washington State Patrol; the Yakima County Sheriff's Office; the City of Granger; the City of Sunnyside; the City of Wapato; the City of Selah; and the Yakama Nation Police Department. At the time of the search that underlies this action, Plaintiff Mike Aarlie ("Mr. Aarlie") and Plaintiff Darla Aarlie ("Ms. Aarlie") were residents of the City of Grandview, Washington.

Defendant's Motion for Summary Judgement as to all claims is opposed by Plaintiffs. Plaintiffs' motion for summary judgment is opposed by Defendant on procedural grounds, although it is also frivolous and without merit.

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. United States Dept. of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment as a matter of law when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the moving party does not have to

disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In meeting this burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Miller v. Glenn Miller Productions*, 454 F.3d 975, 987 (9th Cir. 2006) (quoting FED. R. CIV. P. 56(e)).

## BACKGROUND

As to Defendant's motion, the evidence and inferences arising therefrom are viewed in the light most favorable to the Aarlies. The facts are undisputed except where otherwise stated.

On January 13, 2006, Defendant Akins spoke with a Confidential Source regarding a suspected methamphetamine lab located at 601 Hillcrest, Grandview, Washington, a residence at least temporarily occupied by the Aarlies. (Akins Decl. ¶¶ 7, 15). On January 14, 2006, based in part upon the information provided by the Confidential Source, Akins obtained a search warrant for the residence from Grandview Municipal Court Judge Kimbrough. (Akins Decl. ¶¶ 8-9; Exhibit A & D).

On January 17, 2006, at approximately 12:29 p.m., Akins participated in executing the search warrant, along with other law enforcement personnel including, among others, fellow L.E.A.D Task Force Detectives Matt Steadman and Scott Bailey. (Akins Decl.

¶ 10; Steadman Decl. ¶¶ 3-5; Bailey Decl. ¶¶3-5).  As they approached the residence, the detectives saw someone looking out of a window.  (Akins Decl. ¶ 10; Steadman Decl. ¶ 5; Bailey Decl. ¶ 5).  Detective Steadman knocked on the door and shouted "police search warrant," and immediately thereafter heard people running within the house.  (Steadman Decl. ¶ 5).  After no response, the law enforcement officers, including Akins, Steadman, and Bailey, entered the residence with their weapons drawn.  (Akins Decl. ¶ 10).  Akins held his gun near his chest with the muzzle of the firearm pointed toward the ground.  (Akins Decl. ¶ 10).  Similarly, Steadman held his gun pointed in front of him toward the floor.  (Steadman Decl. ¶ 5).  According to the detectives, it is the usual practice for L.E.A.D. officers to be armed and to have their weapons drawn when executing a search warrant.  (Akins Decl. ¶ 10; Steadman Decl. ¶ 5; Bailey Decl. ¶ 5).  Also, it is commonly known by L.E.A.D. officers that people engaged in the manufacture of methamphetamine often have weapons and act irrationally, impulsively, and unpredictably.  (Dft. St. Fact ¶¶ 21-22).

As Akins and Steadman entered the home, they saw a partially-clothed woman, later identified as Ms. Aarlie, running toward the back of the house.  Together, they followed her into a back room, where a door leading to the backyard of the property was open and she was gone.  (Akins Decl. ¶ 11; Steadman Decl. ¶ 6).  Instead of Ms. Aarlie, the room was occupied by a man, later identified as Mr. Aarlie, who was partially undressed and pulling on pants.  (Akins Decl. ¶ 11).  According to Akins, after he observed that Mr. Aarlie was unarmed, he holstered his firearm and ordered Mr. Aarlie to the floor.  When Mr. Aarlie failed to comply,  Akins took Mr. Aarlie to the ground with the assistance of Detective Steadman and handcuffed him.  (Akins Decl. ¶ 11; Steadman Decl. ¶ 6).  According to Akins and Steadman, Mr. Aarlie was "not cooperative" but was also "not combative" and "offered no significant resistance." (Akins Decl. ¶ 11; Steadman ¶ 5).  Detective Steadman states that throughout, he never saw Akins point his firearm at Mr. Aarlie.  (Steadman Decl. ¶ 6).

ORDER - 4

Mr. Aarlie, on the other hand, provides a very different account of being apprehended by the Defendant. According to Mr. Aarlie's Affidavit of Truth:

> I was taken into custody inside the home, once I was ordered to turn around against the wall I was knocked down and the Defendant then pulled his weapon and put against my head and stated if I move Ill blow your head off (sic).

As for Ms. Aarlie, the undisputed evidence shows that Akins did not apprehend, arrest, or take Ms. Aarlie into custody. (Dft. St. Fact ¶¶ 7, 13). In fact, while Akins was arresting Mr. Aarlie, other officers were outside the home apprehending and arresting Ms. Aarlie. (Dft. St. Fact ¶ 15; Akins Decl. ¶ 12). Specifically, L.E.A.D. Detective Bailey and L.E.A.D. Detective Erik Hobatko chased Ms. Aarlie out of the house and into the backyard, where Grandview Police Officer Arraj was already ordering Ms. Aarlie to the ground. When Ms. Aarlie eventually complied with their orders, she was handcuffed, assisted to her feet, and placed into a patrol car. (Bailey Decl. ¶ 6).

In executing the search warrant, law enforcement officers found methamphetamine and drug paraphernalia in the residence's living room and items used in the manufacture of methamphetamine throughout the house and surrounding property. (Akins Decl. ¶¶ 14-15; Steadman Decl. ¶¶ 9-10). In addition, the officers found things belonging to the Aarlies, such as "personal belongings, personal documents and a pet iguana," indicating that the Aarlies were living at the residence at the time of the search. (Akins Decl. ¶ 15; Bailey Decl. ¶ 8).

After the search and arrests, Akins prepared a Declaration of Probable Cause describing the Plaintiffs' alleged criminal activity and submitted it to the Yakima County Prosecuting Attorney. (Dft. St. Fact ¶ 33; Akins Decl. ¶ 21; Exhibit H). Then, as evidenced by the January 18, 2006 date stamp on each document, Akins filed the Affidavit for Search Warrant, Search Warrant, and Return of Search Warrant with the Grandview Municipal Court. (Akins Decl. ¶ 20; Exhibit A, D & G). On January 20,

2006, the Yakima County Prosecuting Attorney filed the Declaration of Probable Cause and criminal Informations against the Aarlies in the Superior Court of Washington for Yakima County. (Dft. St. Fact ¶ 34; Beyer Decl. ¶¶ 2-5; Exhibits A-D).

Finally, according to the Declaration of Anita Palacios, City Clerk of the City of Grandview, Washington, the Plaintiffs have not filed a claim against Defendant Akins pursuant to RCW 4.96.010 et seq. (Palacios Decl. ¶ 1-4).

## ANALYSIS

**I. State Law Claims:**

In addition to constitutional claims, Plaintiffs brought state law claims for malicious prosecution, false arrest and imprisonment, assault, battery, and intentional infliction of emotional distress. Defendant erroneously asserts that the Plaintiffs' state and federal law claims must be dismissed because the Plaintiffs failed to file a notice with the City of Grandview pursuant to Washington's notice of claim statute, RCW 4.96.020. To support this contention, Defendant cites *Wright v. Terrell*, 135 Wash.App. 722, 739 (2006), where a Washington State Appellate Court, without citing any authority, upheld a trial court's decision to dismiss a constitutional claim under 42 U.S.C. § 1983 along with state tort claims because the appellants did not comply with the requirements of RCW 4.96.020(4).

This portion of the Appellate Court's decision is contrary to both United States Supreme Court and Ninth Circuit precedent. In *Felder v. Casey*, 487 U.S. 131, 138 (1988), the United States Supreme Court held that a Wisconsin notice-of-claim statute that effectively shortened the statute of limitations and imposed an exhaustion requirement on claims against public agencies and employees was pre-empted insofar as it was applied to § 1983 actions brought in either state or federal court. The Ninth Circuit applied this holding in *Joshua v. Newell*, 871 F.2d 884, 886 (1989), when it held that the Washington notice of claims statute, RCW 4.92.110 (1988), which required tort plaintiffs suing state defendants to file their claim with the state before commencing any

ORDER - 6

action, does not apply to section 1983 claims brought in federal court because of the supremacy of federal law. Accordingly, Plaintiffs need not comply with RCW 4.96.020 before bringing a § 1983 claim in federal court.

However, the Supreme Court did note in *Felder*, 487 U.S. at 151 (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945)) that "[u]nder *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), when a federal court exercises diversity or pendent (now supplemental) jurisdiction over state-law claims, 'the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.'" RCW 4.96.020 provides:

> No action shall be commenced against any local governmental entity, or against any local governmental entity's officers, employees, or volunteers, acting in such capacity, for damages arising out of tortious conduct until sixty days have elapsed after the claim has first been presented to and filed with the governing body thereof. The applicable period of limitations within which an action must be commenced shall be tolled during the sixty-day period.

The statute requires a claimant first present any claim for damages based on tort law to the governing body of the local government entity, then wait 60 days before filing suit. *Medina v. Public Utility Dist. No. 1 of Benton County*, 147 Wash.2d 303, 316 (2002). Strict compliance with the pre-claim notice procedures is required. *Id.*; *Bosteder v. City of Renton*, 155 Wash.2d 18, 41 (2005). Failure to comply with the statutory claim-filing requirement requires dismissal of the claims. *See, e.g., Reyes v. City of Renton*, 121 Wash. App. 498, 502 (2004).

Accordingly, RCW 4.96.020's procedural requirements must be strictly applied to Plaintiffs' state law tort claims in this matter, and based upon the record before the court, Plaintiffs have not filed their claims with any governmental body. According to the City Clerk of the City of Grandview, Washington, there is no record of the Plaintiffs filing a claim against the Defendants and Plaintiffs have provided no evidence to the contrary.

ORDER - 7

Therefore, Defendant's summary judgment motion as to Plaintiffs state law claims must be **GRANTED** and Plaintiffs' state law claims must be dismissed.

## II. Darla Aarlie's Constitutional Claims:

Because the state criminal charges pending against Plaintiff Darla Aarlie in Yakima County Superior Court were dismissed on May 22, 2006, the court allowed her constitutional claims for excessive force, unreasonable search and seizure, wrongful arrest, false imprisonment, and malicious prosecution to go forward. Based upon the record before the court upon summary judgment, however, it is clear that these claims are frivolous and without merit.

### A. Excessive Force:

The record demonstrates that Akins was not involved in the apprehension or arrest of Ms. Aarlie. In fact, in his declaration, L.E.A.D. Detective Bailey states that he and L.E.A.D. Detective Hobatko chased Ms. Aarlie into the residence's backyard where Grandview Police Officer Arraj was already ordering Ms. Aarlie to the ground. She was then handcuffed, assisted to her feet, and placed into a patrol car. During this time, Akins was inside the residence detaining Mr. Aarlie. Plaintiffs do not refuted this account and have failed to provide any evidence showing that Akins participated in the detention or arrest of Ms. Aarlie. Accordingly, Defendant Akins' motion for summary judgment as to Ms. Aarlie's claim of excessive force is **GRANTED.**

### B. Unreasonable Search and Seizure, Wrongful Arrest, False Imprisonment

Ms. Aarlie's claims for unreasonable search and seizure, wrongful arrest, and false imprisonment are premised upon the Plaintiffs' allegation that Akins did not apply for a search warrant until January 18, 2006, the day after the search and resultant arrests occurred. Typically, searches and seizures do not violate the Fourth Amendment if they are based on probable cause and executed pursuant to a valid search warrant. *United States v. 4,432 Mastercases of Cigarettes, More or Less*, 448 F.3d 1168, 1176 (9th Cir.

ORDER - 8

2006) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). A valid warrant must describe the places that officers may search and the types of items that they may seize with particularity. *Dawson v. City of Seattle*, 435 F.3d 1054, 1064 (9th Cir. 2006).

In this action, the record before the court shows that a valid search warrant was issued and executed. As evidenced by the Affidavit for Search Warrant and Search Warrant signed by a Grandview Municipal Court Judge on January 14, 2006, Defendant Mike Akins obtained a search warrant for the residence located at 601 Hillcrest, Grandview, Washington, three days before the search. In addition, the Search Warrant is detailed as to the areas the officers may search and the types of evidence that may be seized. Other than pointing to the January 18, 2006 date stamp, which merely evidences when the documents were filed following the search, Plaintiffs have produced nothing to show that the search warrant is invalid. Therefore, Defendant's motion for summary judgment as to the Fourth Amendment claims for unreasonable search and seizure, wrongful arrest, and false imprisonment is **GRANTED.**

### C. Malicious Prosecution:

In order to establish a federal malicious prosecution claim under § 1983, Plaintiffs must produce evidence to rebut the presumption that the prosecutor filing the complaint exercised independent judgment in determining that probable cause existed. *See Newman v. County of Orange*, 457 F.3d 991, 993 (9th Cir. 2006) (stating that the plaintiff bears the burden of producing evidence to rebut the presumption that "'[f]iling a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for the accused's arrest exists at that time.'" (quoting *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981) (*Smiddy I*)). This presumption may be rebutted if the plaintiff produces evidence that the prosecutor was subject to "unreasonable pressure by the police officers, or that the officers knowingly withheld relevant information with the intent to harm, or that the officers

ORDER - 9

knowingly supplied false information." *Id.* (quoting *Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986) (*Smiddy II*). A plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment. *Id.* at 994-95 (stating that "[t]o rebut the presumption of independent judgment and to survive summary judgment on a malicious prosecution claim, a plaintiff must provide more than an account of the incident in question that conflicts with the account of the officers involved"); *Cf. Barlow v. Ground*, 943 F.2d 1132, 1137-38 (9th Cir.1991) (holding that plaintiff overcame the presumption of independent judgment where the arresting officers' reports omitted critical information, the officers' accounts conflicted, and an independent witness corroborated at least part of the plaintiff's version of events). When a plaintiff cannot provide any of the foregoing evidence, summary judgment for the defendant is appropriate. *Smiddy II*, 803 F.2d at 1471.

In this matter, Plaintiffs fail to provide any information to overcome the presumption of independent judgment. Plaintiffs do not submit evidence that Defendant pressured the prosecutor to file charges, or that Defendant omitted information or included false information in his incident reports. Accordingly, Defendant's motion for summary judgment as to claim of malicious prosecution is **GRANTED.**

**III. Mr. Aarlie's Claim of Excessive Force:**

As to Mr. Aarlie's claim of excessive force, Defendant raises the defense of qualified immunity and seeks summary judgment. In *Saucier v. Katz*, 533 U.S. 194 (2001), the United States Supreme Court laid out a two-part analysis for determining an officer's entitlement to qualified immunity. First, as a threshold matter, the court must decide whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1053 (9th Cir. 2007) (citing *Saucier*, 533 U.S. at 201). If no constitutional right is found to have been violated, the inquiry ends because the plaintiff cannot prevail. *Saucier*, 533 U.S. at 201. However, if the plaintiff alleges

conduct that would violate a constitutional right, *Saucier's* second prong requires the court to determine whether the right was "clearly established . . . in light of the specific context of the case" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (2003) (quoting *Saucier*, 533 U.S. at 201-02); *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003). The *Saucier* court recognized that in certain situations it may be difficult for a police officer to determine how to apply the relevant legal doctrine to particular circumstances. *Saucier*, 533 U.S. at 205-06. Therefore, if an officer makes a reasonable mistake as to the legality of his actions, the officer is still entitled to qualified immunity. *Id.* at 206 (explaining that qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force'").

**A. First Prong: Did Akins violate a constitutional right based upon the facts alleged?**

The court must first determine whether the facts alleged, taken in the light most favorable to the Plaintiffs, constitute a violation of the constitutional prohibition against the use of excessive force. *Drummond*, 343 F.3d at 1056. Claims of excessive force are analyzed under the Fourth Amendment's objective reasonableness standard and Fourth Amendment jurisprudence has long recognized that the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat of coercion to effect it. *Graham v. Connor*, 490 U.S. 386, 388, 396 (1989). The ultimate "reasonableness" inquiry in an excessive force case is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

To determine whether the force used was reasonable under the circumstances, courts must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Davis*, 478 F.3d at 1054 (citations omitted). In performing this calculus, the court must "assess

ORDER - 11

the quantum of force used" and then "measure the governmental interests at stake" by considering "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citations omitted). Throughout, courts must use "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "must make allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a given situation." *Graham*, 490 U.S. at 396-97.

Also, because cases involving police misconduct almost always involve disputed factual contentions and turn on credibility determinations, the Ninth Circuit has "held on many occasions that summary judgment or judgments as a matter of law in excessive force cases should be granted sparingly." *Drummond*, 343 F.3d at 1056 (citing *Liston v. County of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (citing several cases)); *see also Davis*, 478 F.3d at 1054-55 (stating that these "cases almost always turn on a jury's credibility determinations"). This action is no different.

Most of the Defendant's factual allegations are undisputed. Defendant was a member of a drug task force executing a search warrant on a residence suspected of housing a methamphetamine lab. As the officers approached the residence, occupants could be seen looking out a window and after the officers knocked and announced, people could be heard running within the residence. When Akins and Steadman first encountered Mr. Aarlie in the back room of the residence, their guns were drawn but were pointed at the floor. Then, after seeing that the Mr. Aarlie was unarmed, Akins claims he holstered his gun and ordered Mr. Aarlie to the floor. When Mr. Aarlie failed to comply, Akins took him to the floor with Steadman's assistance and handcuffed him. Although not cooperative, Mr. Aarlie was not combative and offered no significant resistance. However, Mr. Aarlie's account differs in one important aspect. In his affidavit, Mr. Aarlie states that once he was on the ground "Defendant then pulled his

weapon and put against my head and stated if I move Ill blow your head off" (sic), although this is disputed by the Defendant.

Viewing the facts in the light most favorable to Mr. Aarlie by assuming the contents of his affidavit are true, combined with the undisputed portions of Akins' and Steadman's declarations, Mr. Aarlie has raised disputed issues of fact and has stated a claim for excessive force. *See Robinson v. Solano County*, 278 F.3d 1007, 1015 (9th Cir. 2002) (en banc) (recognizing the general principle that "pointing a gun to the head of an apparently unarmed suspect during an investigation can be a violation of the Fourth Amendment, especially where the individual poses no particular danger"); *Cf. Drummond*, 343 F.3d at 1058 (stating that only minimal force is permitted once a suspect is handcuffed, lying on the ground, and is not resisting the officers).

**B. Second Prong: Was the Right Clearly Established?**

Because Mr. Aarlie's affidavit sufficiently states a cause of action for excessive force, the court must determine whether the constitutional right allegedly violated by Akins was "clearly established." "For a constitutional right be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). However, to find that a law is "clearly established," the court need not point to a case with "identical, or even 'materially similar' facts." Instead, the court must determine "whether the preexisting law provided the defendants with 'fair warning' that their conduct was unlawful." *Id.* (quoting *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136-37 (9th Cir.2003)); *Hydrick v. Hunter*, 466 F.3d 676, 690 (9th Cir. 2006).

Whether the right is clearly established is judged as of the date of the alleged incident and is a pure question of law. *Philips v. Hust*, 477 F.3d 1070, 1079 (9th Cir.

ORDER - 13

2007). However, where the reasonableness of the officer's belief that his conduct was lawful "depends on the resolution of disputed issues of fact ... summary judgment is not appropriate." *Wilkins*, 350 F.3d at 956 (citing *Saucier*, 533 U.S. at 216 (Ginsburg J., concurring)); *see also Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995) (stating that whether the law is clearly established is a question of law for the court, but whether a reasonable officer could have believed the action taken was lawful is a mixed question of law and fact). Any genuine issues of material fact concerning the underlying historical facts of what the officer knew or what he did are questions of fact for the jury. *Sinaloa Lake Owners Ass'n*, 70 F.3d at 1099.

In *Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002) (en banc) (overruling *Fuller v. Vines*, 36 F.3d 65 (9th Cir. 1994)), the Ninth Circuit clearly established that pointing a firearm at an unarmed suspect's head who poses no immediate risk to the safety of the officers or others is a use of excessive force. *Solano* involved the police responding to a call about a man carrying a shotgun, who had reportedly shot two dogs, and was in the street yelling. *Id.* at 1010-11. When the police arrived, the unarmed plaintiff approached to explain the situation, but the officers refused to listen and instead pointed their guns at his head, handcuffed him, and shoved him into their patrol car. *Id.* After fifteen to thirty minutes, the officers determined that the plaintiff had not violated any law and he was released. *Id.* Because these events occurred in 1995, the court ultimately held that at that time, the law was not sufficiently established to override the officers' claims of qualified immunity. *Id.* at 1016. However, in so holding, the court stated that "[t]he development of the law with respect to arrests and detentions now allows us to recognize as a general principle that pointing a gun to the head of an apparently unarmed suspect during an investigation can be a violation of the Fourth Amendment, especially where the individual poses no particular danger." *Id.* at 1015; *see also Tekle v. United States*, 457 F.3d 1088, 1097 (9th Cir. 2006) (stating that "since 1984 . . . pointing a gun at a suspects head can constitute excessive force" in the Ninth Circuit).

ORDER - 14

Defendant's use of *Muehler v. Mena*, 544 U.S. 93 (2005) to support the reasonableness of Akins' alleged use of force and to suggest that the constitutional right allegedly violated by Akins was not "clearly established" is misplaced. In *Muehler*, the Supreme Court held that police officers could detain the occupants of a residence, in handcuffs, in order to minimize any risk to the officers executing a search warrant for deadly weapons and evidence of gang membership. *Id.* at 99-100. Defendant, however, has picked out a single sentence from the opinion to support his position: "[Plaintiff] Mena was asleep in her bed when the SWAT team, clad in helmets and black vests adorned with badges and the word 'POLICE,' entered her bedroom and placed her in handcuffs at <u>gunpoint</u>." *Id.* at 96 (emphasis added). Defendant places a disproportionate amount of emphasis on a single descriptive sentence in a rather lengthy opinion. Somewhat more appropriately, Defendant points to *Muehler's* reliance on *Michigan v. Summers*, 452 U.S. 692, 702 (1981), wherein the Court recognized that the execution of a search warrant for narcotics is the kind of situation that "may give rise to sudden violence or frantic efforts to conceal or destroy evidence," and stressed that "the risk of harm to officers and occupants is minimized 'if the officers routinely exercise unquestioned command of the situation.'" *Muehler*, 544 U.S. at 99-100 (quoting *Summers*, 452 U.S. at 702-703).

Based upon *Muehler* and *Summers*, Akins and the other officers were certainly justified in entering the residence with their firearms drawn, but those cases do not address the conduct alleged by Plaintiffs. No reasonable officer in Akins' position could have concluded that it would be constitutional to place a gun to the head of, and threaten to shoot, an unarmed, non-resisting suspect who was on the ground and physically restrained by two officers. Ultimately, because law enforcement officers have power over a citizens' liberty, and sometimes over his life, officers are responsible "for keeping abreast of constitutional developments," *Kennedy*, 439 F.3d at 1066 (citations omitted), and at the time of the alleged incident, the law in the Ninth Circuit was clearly

established. Pointing a gun to the head of an apparently unarmed suspect during an investigation, especially where the suspect poses no particular danger at the time, can constitute a violation of the Fourth Amendment.

Therefore, Mr. Aarlie's affidavit is sufficient to defeat Defendant's motion for summary judgment as to this issue. Taking all reasonable inferences in the favor of the Plaintiff, the court cannot find as a matter of law that the alleged use of force in this matter was constitutionally reasonable. Accordingly, the Defendant's motion for summary judgment based upon qualified immunity as to Mr. Aarlie's excessive force claim is **DENIED**.

**IV. Plaintiff's Motion for Summary Judgment:**

It appears the Plaintiffs filed Plaintiffs (sic) Response to Defendants (sic) Motion to Dismiss[;] Plaintiffs (sic) Motion for Summary Judgment (Ct. Rec. 17) in response to Defendant's Amended Answer to Complaint and Affirmative Defenses (Ct. Rec. 15). As the Defendant points out, however, Plaintiffs failed to properly note their motion pursuant to Local Rule 7.1, which states that "failure to file a Notice of Hearing with a motion shall . . . be construed to be consent to the entry of an adverse order." Defendant argues that based upon this rule, Plaintiffs' motion should be denied. This rigid application of the local rules is unnecessary, however, because Plaintiffs' motion is frivolous and without merit for the reasons discussed *supra*.

**SUMMARY OF CONCLUSIONS**

(1) Defendant's motion for summary judgment regarding Plaintiffs' state law claims is **GRANTED.**

(2) Defendant's motion for summary judgment as to Ms. Aarlie's constitutional claims for excessive force, unreasonable search and seizure, wrongful arrest, false imprisonment, and malicious prosecution is **GRANTED.**

(3) Defendant's motion for summary judgment as to Mr. Aarlie's claim for excessive force based on qualified immunity is **DENIED.** Defendant shall provide notice to the court within **ten (10) days** concerning whether Defendant chooses to bring an

interlocutory appeal regarding qualified immunity under *Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996). If Defendant chooses not to pursue and interlocutory appeal the court will schedule another telephonic conference to schedule time for completion of discovery and a jury trial, unless both sides waive a jury, in which event the matter will be scheduled for a non-jury trial.

(4)  Plaintiffs' motion for summary judgment is **DENIED.**

   **IT IS SO ORDERED.**  The Clerk of this court shall enter this Order and forward copies to counsel and to the Plaintiffs.

   **DATED** this 10th day of May 2007.


                         s/ Justin L. Quackenbush
                      JUSTIN L. QUACKENBUSH
                SENIOR UNITED STATES DISTRICT JUDGE